and they are silent as to all other cases. This raises a presumption of some strength against the existence of the power in other cases. Moreover, in the case of involuntary bankruptcy before adjudication, there are reasons for this remedial process which do not apply after adjudication or in a voluntary case. An involuntary proceeding is one hostile to the debtor and presumably against his will, and based upon prima facie proof of an act of bankruptcy injurious to or a fraud upon his creditors, and until the return of the order to show cause, and the action of the court thereon, the estate of the bankrupt is not so entirely within the control of the court as it is after an adjudication, or as it is at all times in a voluntary case, in which, in the petition itself, the bankrupt submits his property to the jurisdiction and disposition of the court for the purposes of the act. Nor is the bankrupt himself, before adjudication in an involuntary case, to the same degree subject to the orders of the court, or within its power to punish for contempt, as a party to a proceeding before it, as he is in voluntary cases after the filing of the petition. For these reasons it may well have been thought necessary in proper cases where, by evading the jurisdiction, he might defeat the purpose of the act to bring his property within the control of the court, to give a limited power until the hearing and decision upon the petition to hold him in custody to secure his appearance. But, after adjudication and at all times in voluntary cases, the act provides other means of coercing the debtor to do what is required of him under the act. Section 5104 provides that he shall be subject to the orders of the court. He is liable at any time to be put under examination by any creditor, and the power is expressly given to punish any refusal or neglect to obey the orders of the court as for a contempt. Thus it will be seen that the creditors are not remediless.

These are substantial powers of coercion, and in addition to this the bankrupt's right to his discharge will be forfeited if he absconds or fails in any respect to fulfill on his part all the requirements of the act. Although cases may be imagined where there may be a failure of justice and a defeat of the purposes of the act through the absconding of the debtor, yet it may well have been thought that these coercive powers were sufficient for the general enforcement of the act. At any rate, these provisions seem to me to relieve the case from the argument that the power of arrest is essential to the proper exercise by the court of the powers granted by the act. Further support to this conclusion is, I think, to be drawn from general order No. 13, which regulates provisional remedies in voluntary cases, and which provides for the issue of a provisional warrant to seize the property in a voluntary case, but makes no provision for a warrant of arrest in a voluntary case. The act expressly authorizes a provisional warrant only in case of involuntary bankruptcy; but by this general order the supreme court has indicated its opinion that the issue of a provisional warrant, in a voluntary case where the property is in peril, is authorized by implication by the other provisions of the act, and such implication may be fairly drawn from the fact that by the petition the property of the bankrupt is voluntarily subjected to the disposition of the court for the purposes of the act. And the fact that no provision has been made in this or any other general order, for a warrant of arrest in any other case than that expressly provided for in the act, indicates the opinion of the supreme court that no such remedy is available. For these reasons the motion for a warrant of arrest is denied, without critical examination of the circumstances which are claimed to make an arrest proper in this case.

---

## Case No. 5,912.

### In re HALE.

### [19 N. B. R. 330.] [1]

District Court, D. Vermont. April 5, 1879.

BANKRUPTCY — FOLLOWING PROPERTY — SALE OF REAL ESTATE OF BANKRUPTS.

1. The court does not follow the property of the estates of bankrupts into the hands of purchasers, but only to their hands. After they have once had the property, they must take care of it and of the possession of it.

2. The bankrupt occupied the premises in question until conveyance thereof was made by the assignee to the purchaser. After the purchaser had perfected title, he had an interview with the bankrupt, in which it was agreed that the latter should vacate on a subsequent specified day. This he did not do. On petition by the assignee for delivery of possession to the purchaser, *held*, that the bankrupt was holding as a tenant under the purchaser, and not under the assignee; that the assignee had no further interest there, and was not further bound to maintain the purchaser's possession for him, nor to keep possession ready for him.

[This was a proceeding in bankruptcy in the matter of Charles F. Hale.]

WHEELER, District Judge. The petition of the assignee for delivery of possession of the real estate to the purchaser has been referred to the register, and heard upon his report. The facts reported show no ground for any action of this court. Regularly, possession of the estate, real and personal, should have been taken by the marshal by virtue of the warrant issued upon the adjudication of bankruptcy, and passed to the assignee upon the assignment of the estate to him, and to the purchaser from the assignee upon the conveyance from the assignee to him. Whether possession was taken of any part of this farm by the marshal or by the assignee does not appear; nor does it appear why possession of the part the bankrupt continues to occupy, whether the whole or a part, was not taken. It merely is shown that the bankrupt continued to

---

occupy until the conveyance from the assignee to the purchaser, in some way, with the consent of, or without apparent objection by, the assignee.

If, then, whatever the terms of his occupancy were, he had refused to deliver up possession or to vacate the premises, unquestionably under the provisions of section 5104, Rev. St. U. S., this court could require the delivery up or vacation by order and punish as for a contempt on any failure to comply. Probably it was in that view that the assignee commenced this proceeding. But the report shows that after the purchaser had perfected his title, in an interview between him and the bankrupt, it was agreed that the bankrupt should vacate the premises by the 15th day of March then next, now just passed. This directly implies that it was agreed that the bankrupt might occupy till that time. The agreement to vacate would necessarily include an agreement for occupation until he should vacate. After that arrangement the bankrupt was occupying under the purchaser, and not under the assignee. The assignee had no further interest there. He was not further bound to maintain the purchaser's possession, nor to keep possession ready for him. He undertook that the purchaser should have good title, but that would extend to the rightful, not the wrongful, claims of others. This possession of the bankrupt is wrongful, not rightful, since the time when he agreed with the purchaser to quit. This court does not follow the property of estates of bankrupts into the hands of purchasers, but only to the hands of purchasers. After they have once had the property, they must take care of it, and of the possession of it. This purchaser has had this property once, and the possession of it, by having the bankrupt in possession of it under him. For aught that appears, and upon what does appear, the bankrupt was his tenant to March 15th, and since then has been holding over after the expiration of his tenancy. The laws of the state afford him the same remedies that are afforded other citizens in such cases, and which are ample, or as ample as the law-making power of the state has seen fit to provide for in such cases.

The petition is dismissed, but without prejudice.

## Case No. 5,913.
### HALE v. BALDWIN.
[1 Cliff. 511;[1] 24 Law Rep. 270.]

Circuit Court, D. Massachusetts. Oct. Term, 1860.[2]

INSOLVENCY—DISCHARGE—CITIZEN OF ANOTHER STATE—HOW FAR BARRED.

A discharge of a debtor under a state insolvent law is invalid against a creditor or citizen

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirmed in 1 Wall. (68 U. S.) 223.]

of another state who has never voluntarily subjected himself to the laws of the state where the discharge was obtained, otherwise than by the origin of his contract, and the plea of such discharge is insufficient to bar the rights of the plaintiff.

[See note at end of case.]

This was an action of assumpsit. Defendant was the maker of a certain promissory note as follows: "$2,000. Boston, February 21, 1854. Six months after date I promise to pay to the order of myself two thousand dollars, payable at Boston, value received. James W. Baldwin." The note was duly indorsed by the defendant to the order of the plaintiff [Oscar C. Hale]. The plaintiff was and always had been a citizen of Vermont, and the defendant, at the time of the making the note, was a citizen of Massachusetts. After the making of the note and before the commencement of the suit, the defendant, upon due proceedings in the courts of Massachusetts, pursuant to the insolvent laws of the state, obtained a certificate of discharge from his debts, and then afterwards appeared and pleaded this discharge in bar of this action. The plaintiff did not prove his debt against the defendant's estate in insolvency, or otherwise become a party to the proceedings.

H. C. Hutchins, for plaintiff.

The decisions are uniform that if these notes had no particular place of payment, the discharge would be no bar. Ogden v. Saunders, 12 Wheat. [25 U. S.] 213; Savoy v. Marsh, 10 Metc. [Mass.] 594. It makes no difference that the note was payable in Boston. This is a question, not where the contract was made to be performed, but whether the contract was made with a citizen of another state. Whitney v. Whiting, 35 N. H. 457; Springer v. Foster [Case No. 13,266]; Demeritt v. Exchange Bank [Id. 3,780]; Donnelly v. Corbett, 3 Seld. [7 N. Y.] 500; Woodhull v. Wagner [Case No. 17,975]; Poe v. Duck, 5 Md. 1; Frey v. Kirk, 4 Gill & J. 509; Scribner v. Fisher (dissenting opinion of Metcalf, J.) 2 Gray, 43–48; Gardner v. Lee's Bank, 11 Barb. 558; Hempstead v. Reed, 6 Conn. 480; Smith v. Parsons, 1 Ohio, 236.

F. A. Brooks, for defendant.

It is clear, upon legal authorities (excepting for the moment those cases where the state legislation is said to be limited, in this respect, by the United States constitution), that a contract discharged by the lex loci (both of making and performing the contract) is discharged everywhere, and that the citizenship of the contracting parties is immaterial. Story, Confl. Laws (3d Ed.) §§ 242, 263, 279, 280, 335; May v. Breed, 7 Cush. 38; 2 Kent, Comm. (6th Ed.) 459. The doctrine or principle seems to be, that, as contracts depend upon, and must be referred to, some legal sanction for construc-